UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

WILLIAM SILVERS and WILLIAM
SILVERS ART, INC.,

      Plaintiffs,

v.                                            Case No: 5:17-cv-169-Oc-34PRL

VERBATA, INC., SEAN MCLAIN, LISA
MCLAIN and KIRK SMITH

      Defendants.

---

# REPORT AND RECOMMENDATION[1]

      In this Copyright action, Defendants collectively move to dismiss for lack of personal jurisdiction or, alternatively, improper venue. (Doc. 14). Plaintiffs, William Silvers and William Silvers Art, Inc., have opposed the motion. (Doc. 23). Plaintiffs allege that jurisdiction is proper under Florida's long-arm statute. Construing all reasonable inferences in favor of Plaintiffs, the motion to dismiss is due to be denied as Defendants have failed to rebut Plaintiff's jurisdictional allegations. Further, venue is proper in the Middle District of Florida.

## I.    BACKGROUND

### A.  The Parties

      Defendant Verbata, Inc., d/b/a Acme Archives, ("Acme") is a licensing company incorporated in California with its principal place of business in Burbank, California. Defendants

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Sean and Lisa McLain are California residents and the co-presidents of Acme. (Doc. 1 ¶¶5–6) (Doc. 14-1 ¶4). Acme contracts with artists, working as independent contractors, to produce "Disney-inspired art": paintings, drawings, and other works that incorporate Disney characters. (Doc. 14-1 ¶¶9, 11).[2] Acme then reproduces and sells the works, pursuant to its licensing agreement with Disney, at various locations, including at Disney locations in Florida and on Disney Cruises that are staged at, and depart from, ports in Florida. (Doc. 14-1 ¶¶13–14). Acme provides a percentage of royalties on each sale to its artists along with other compensation.

Silvers is one such artist. Originally from Florida, Silvers lived in California during much, but not all, of the time period relevant to this dispute while working on an animation project for DreamWorks Animation. (Doc. 23-1 ¶¶6, 14–15). In 2010, he bought a home in California and re-incorporated his publishing business, which at that time was called "Live Wire Studios," in California before dissolving it. (Doc. 23-1 ¶¶36, 54). (Doc. 14-1 Exh. 8). In July 2014, he returned to Florida and currently resides in Lake County—his licensing company, William Silvers Art, Inc., is a Florida corporation. (Doc. 23-1¶¶3–5, 54).

Defendant Kirk Smith, d/b/a as Schimmelsmith Publishing, LLC, is also a California resident and Silvers's former agent. (Doc. 14-2 ¶¶1, 2, 11).[3] Smith assisted Silvers in selling reproductions of his work and advised him on how to promote his work. (Doc. 14-2 ¶12). The complaint alleges, as well, that Smith is an "insider" with Acme and worked as its agent. (Doc. 1 ¶23). Smith shared office space with Acme because he represented a number of its clients. (Doc. 14-2 ¶¶16, 24).

---

[2] When Acme contracts with an artist to produce specific works, the art is considered a "work-for-hire" under the Copyright Act. A work-for-hire usually belongs to the employer or person for whom the work was prepared unless the parties otherwise agree by written contract. *See* 17 U.S.C. § 101.

[3] Schimmelsmith Publishing, LLC is an Arizona LLC with its principal place of business in Burbank, California.

## B.  The Jurisdictional Allegations

Although there is some confusion as to when exactly Silvers moved to California, there is no dispute that when the parties' business relationship began Silvers was living in Florida. (Doc. 23-1 ¶¶8–12) (Doc. 27-1 [hereinafter, "Lisa McLain Depo."] at 107).[4] Silvers then moved to California where he created a majority of the Disney-inspired works at issue here and where a good portion of the parties' business relations took place. (Doc. 14-1 Exh. 9, 12). There is also no dispute that Silvers returned to Florida before the parties' business relationship ended, and that the parties continued to work together while Silvers was based in Florida. Acme continued to send Silvers royalty payments for his work and solicit additional Disney-inspired art—including works to be sold on consignment at Disney parks in Florida. (Doc. 27-3 at 24–30).

Central to this litigation is a dispute over when and how the parties memorialized their business relationship. While Silvers contends the parties had only an oral agreement, the record contains three written contracts from 2008, 2011, and 2013 that Defendants claim are valid. Silvers signed the 2008 agreement but argues that it is inoperative because it was never signed by Acme. (Doc. 14-1, Exh. 1). The 2011 agreement has Silvers's name and Florida address printed at the top but no signature from either party. (Doc. 14-1, Exh. 2). The 2013 agreement appears to be signed by both parties, but Silvers alleges this document is a forgery. (Doc. 14-1, Exh. 3). For the purposes of this motion, the Court expresses no view on the validity of these agreements.

Soon after Silvers returned to Florida, Silvers learned that Acme had lost its general license to publish Disney art in the United States.[5] (Doc. 23-1 ¶15). He sent an email to Lisa and Sean

---

[4]  Indeed, Silvers avers that he knew of Acme through its art displays at Disney parks in Florida. (Doc. 23-1 ¶8).

[5]  It is unclear from the record exactly what sort of license was lost. Acme remains licensed to sell its works in Disney parks, including the parks in Florida, and on Disney cruises based in Florida, but apparently Acme no longer has a license to generally distribute Disney-inspired art domestically. (Doc. 14-1 ¶11).

McLain in January 2015 informing them that "due to the loss of Acme's domestic Disney licensing, I will be going back to being a consignment artist and working directly with Disney as I've done in the past." (Doc. 26-2 at 67).

Silvers then became concerned that he had not received all of the compensation owed to him by Acme, including almost a hundred "artist proofs"[6] and additional royalties from sales of his works, and that Acme had not returned to him various original works that he had attempted to sell with the company on a consignment basis. (Doc. 23-1 ¶¶16, 23). When Silvers requested additional artist proofs, Acme responded that the 2013 agreement limited him to ten proofs per edition. (Doc. 1-8). Silvers asked to see a signed copy of the 2013 agreement, but Acme was not able to immediately produce it. Eventually, however, the 2013 agreement was produced. Silvers alleges that Defendants forged his signature on the agreement.[7]

Having decided to market his works independently, Silvers approached Disney Theme Park Merchandise—an entity that, it appears from the record, licenses the sale of Disney-inspired art at Disney parks, including Disney World in Orlando—to re-release twelve images previously released with Acme under a new license between Silvers and Disney Theme Parks. (Doc. 23-1 ¶23). Disney Consumer Products informed Silvers, however, that there would be a conflict if the images were released and that Disney's current licensee would likely object. (Doc. 27-6 at 48). Silvers alleges that Acme used the forged 2013 contract to convince Disney Consumer Products that Silvers had created these artworks under Acme's license. (Doc. 23-1 ¶23). Silvers then brought

---

[6] According to the complaint and the various agreements, "Artist proofs" are prints of an edition of reproduced work given to the artist to freely distribute. (Doc. 1 ¶20). These artist proofs constitute important compensation to the artist, according to Silvers. (Doc. 23-1 ¶16).

[7] Silvers also claims that Smith was involved in creating the forged 2013 agreement and conspired with Acme and the McLains to defraud him of his artwork. Plaintiffs' forgery allegation is supported by an affidavit from E'lyn Bryan, a "forensic document examiner" who attests—"with the highest level of confidence"—that the 2013 agreement is a forgery. (Doc. 25 ¶8).

claims for copyright violation, breach of contract, breach of fiduciary duty, conversion, and tortious interference with his business relations.

## II.   LEGAL STANDARD

Motions to dismiss for lack of personal jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(2). The initial burden is on the plaintiff to allege sufficient facts to establish a prima facie case for personal jurisdiction over the nonresident defendant. *Virgin Health Corp. v. Virgin Enterprises*, 393 Fed. App'x 623, 625 (11th Cir. 2010). A prima facie case is established if the plaintiff presents "enough evidence to withstand a motion for directed verdict." *Id.* at 626. The defendant may rebut plaintiff's prima facie case with affidavits or other competent evidence. *Hinkle v. Continental Motors, Inc.*, No. 8:16-cv-2966, 2017 WL 3333120, at *2 (M.D. Fla. July 21, 2017). If defendant succeeds in rebutting plaintiff's prima facie case, the burden returns to the plaintiff to substantiate the jurisdictional allegations in the complaint. *Id.* Where the evidence conflicts, the court will construe all reasonable inferences in favor of the plaintiff. *Id.*

The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis: does the exercise of jurisdiction 1) comport with the long-arm statute of the forum state; and 2) the Due Process Clause of the Fourteenth Amendment. *Virgin Health*, 393 Fed. App'x at 626. If there is a basis for the assertion of personal jurisdiction under the state statute, the court next determines: (1) whether sufficient minimum contacts exist to satisfy due process, and (2) whether maintenance of the suit offends "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla. 1989). Only if both prongs of the due process analysis are satisfied may the court exercise personal jurisdiction over a nonresident defendant. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996).

To permit the exercise of specific jurisdiction, there must first exist "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Secondly, the defendant's contacts with the forum must give rise or relate to the plaintiff's cause of action. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). These two requirements "ensure that a defendant is only burdened with litigation in a forum where his conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *Id.* at 1220–21 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)) (internal quotation marks omitted).

The minimum contacts a defendant has purposely established with the forum must be evaluated in light of other factors to ensure that the exercise of jurisdiction comports with traditional notions of "fair play and substantial justice." *Id.* at 1221 (quoting *Int'l Shoe*, 326 U.S. at 320). While fairness to the defendant is a primary concern, other factors that must be considered in evaluating the fairness requirement include:

> [T]he forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's power to choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.

*World–Wide Volkswagen*, 444 U.S. at 292 (citations omitted).

III.    **Discussion**

A.  **Florida's Long-Arm Statute**

Florida's long-arm statute provides for jurisdiction in Florida over a defendant who commits a "tortious act within this state." Fla. Stat., § 48.193(1)(a)(2.). Here, nearly all of Plaintiffs' claims sound in tort.[8]

Nonresident plaintiffs can commit tortious acts in Florida from outside the state by virtue of "telephonic, electronic, or written communications *into* Florida." *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1208 (Fla. 2010). Under Eleventh Circuit precedent, committing a tortious act within the state also includes engaging in tortious activity outside of the state that nonetheless results in injury within Florida. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1217 (11th Cir. 1999).

Defendants claim, nonetheless, that in order to exercise personal jurisdiction under the tortious act provision, Plaintiffs must demonstrate that a "substantial portion" of the alleged torts were committed in Florida. This is incorrect. Defendants point to two Eleventh Circuit cases where plaintiffs established jurisdiction under the tortious act provision based on the fact that a "substantial aspect" of the alleged tort occurred in Florida. *See Cable/Home Comm. Corp. v. Network Products*, 902 F.2d 829, 857 (11th Cir. 1990) (holding personal jurisdiction was appropriate where defendant broadcast messages into Florida meant to induce purchases of the infringing product); *Williams Electric Co. v. Honeywell*, 854 F.2d 389, 394 (11th Cir. 1998) (finding jurisdiction where subcontracts were negotiated in Florida).

---

[8] The only exception is Plaintiffs' two claims for breach of contract. Plaintiffs' claims for declaratory and injunctive relief are based on the Copyright Act. Copyright claims are by their nature tort claims. *See Broadcast Music, Inc. v. Bisla & Bisla, LLC*, 8:11-cv-2273, 2013 WL 12156534, at *3 (M.D. Fla. April 29, 2013) (imposing joint and several liability for copyright violations).

Although both cases arguably apply a different standard than Plaintiffs argue for here, neither case holds that tortious activity outside of Florida that results in injury within Florida is insufficient to establish personal jurisdiction.[9] Defendants' argument is refuted by clear Eleventh Circuit case law permitting the exercise of personal jurisdiction over claims based on conduct wholly outside the state that nonetheless causes injury within the state. *See, e.g.*, *Posner*, 178 F.3d at 1217 (recognizing different views within the Florida district courts of appeal on the scope of the tortious-act provision and noting that the Eleventh Circuit "consistently has applied the broader construction"); *see also Marshall*, 39 So. 3d at 1206 n.6 (recognizing that the Eleventh Circuit has embraced a broad interpretation of tortious act).

Here, Plaintiffs allege that Defendants tortiously interfered with their right to sell works Silvers created as an independent artist by forging a work-for-hire contract between the parties that would give Acme ownership rights to the works. In addition to generally preventing Plaintiffs from selling their works, Plaintiffs specifically allege that Defendants used the forged work-for-hire contract to prevent Silvers from selling his works under his own license at Disney World in Orlando. (Doc. 1 ¶¶196–209). Defendants concede that for the purposes of the motion to dismiss, Plaintiffs' allegation that the 2013 agreement is a forgery must be accepted as true. (Doc. 14 at 4 n.1). Silvers's affidavit and the email correspondence from Disney support a reasonable inference that Defendants used the forged contract to prevent Silvers from selling his work at Disney parks in Florida. (Doc. 27-6 at 48).

As to the conversion and fraud claims, Plaintiffs maintain that Acme and the McLains are currently withholding twenty-three pieces of art provided to them on consignment, which Plaintiffs have requested but which have not been returned, and forty-three artist's proofs that belong to

---

[9] In fact, *Cable/Home* specifically states that jurisdiction is proper where "a foreign tortious act causes injury within the forum." 902 F.2d at 856 (internal quotation omitted).

Plaintiffs. (Doc. 1 ¶¶129–52). They allege these acts are causing an on-going injury in Florida. Silvers has offered exhibits and images cataloging the artwork that has been provided to him and that is still owed to him. (Doc. 27-12 at 7 to Doc. 27-13). Defendants' declarations do not provide evidence rebutting these allegations beyond offering general denials. (Doc. 14-1, 14-2).[10]

Likewise, the complaint alleges that Smith breached his fiduciary duty to Silvers by failing to work for Silvers's benefit to obtain the consignment works and the artist proofs and conspiring with Acme to defraud him. (Doc. 1 ¶193). It is undisputed that some of this allegedly tortious conduct occurred while Silvers resided in Florida and caused financial damages to Plaintiffs in Florida as well.

In sum, Plaintiffs have alleged sufficient jurisdictional facts to meet their initial burden. Defendants have failed to rebut these allegations. To the extent that Defendants have offered conflicting interpretations of the evidence, at this stage, all reasonable inferences must be drawn in favor of Plaintiffs. Thus, jurisdiction is proper under the tortious act provision of the Florida long-arm statute.[11]

### B. The Due Process Clause

In analyzing whether the exercise of specific jurisdiction comports with due process, the court must determine: 1) whether the claim "arises out of or relates to" the forum; 2) whether the defendant purposefully availed itself of the forum; and 3) whether the exercise of jurisdiction

---

[10] Smith does not deny the existence of a fiduciary relationship with Silvers that continued when Silvers moved to Florida. (Doc. 14-2 ¶19). Nor does Lisa McLain deny that she had possession of Silvers's art on a consignment basis along with many artist proofs and other royalties. While Defendants deny withholding royalties and other artworks, they have not supported this assertion with evidence.

[11] Having determined that jurisdiction is proper based on Plaintiffs' tort claims, the Court need not decide the more contentious evidence related to the breach-of-contract claims. Once jurisdiction is proper under the long-arm statute, jurisdiction is proper over the entire case "as long as the claims arose from the same jurisdiction generating event." *Brenna v. Roman Catholic Diocese of Syracuse N.Y., Inc.*, 322 F. App'x 852, 854 (11th Cir. 2009).

comports with "traditional notions of fair play and substantial justice." *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F. 3d 1339, 1355 (11th Cir. 2013). If the plaintiff meets its burden to establish the first two prongs, the defendant must make a "compelling case" under the third prong to avoid jurisdiction. *Id.*

### 1. Arising -Out-of or Relatedness

The "essential foundation" of personal jurisdiction is the connection between the defendant, the forum, and the litigation. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). In order for jurisdiction to be proper, the plaintiff's claims must arise from or relate to at least one of the defendant's contacts with the forum. *Mosseri*, 736 F. 3d at 1355.

Here, Plaintiffs' claims arise out of, and relate to, Defendants' alleged contacts with Disney parks in Florida for the purpose of preventing Plaintiffs from selling their works on a consignment arrangement at Disney World in Florida. Plaintiffs' claims for conversion and fraud arise out of Defendants' alleged failure to return works of art and royalties to Plaintiffs—who were and are a Florida resident and Florida corporation—when they requested the property be returned. The claims relate to solicitations and communications that occurred, at least in part, while Silvers was living in Florida, including the original agreement in 2008 and follow-on communications after Silvers returned to Florida. The evidence also shows that Defendants sent payments and shipped artworks to and from Silvers at his residence in Florida as part of their agreement and regularly communicated with Plaintiffs by email after he returned to Florida. (Doc. 14-1 Exh. 9) (Doc. 27-3 at 22, 48–51).

Finally, the claim for breach of fiduciary duty against Smith is related to Smith's agent–client relationship that continued for more than a year after Silvers moved to Florida. Although Smith was not physically present in Florida, he conducted a series of communications with Silvers

while Silvers resided in Florida, including assisting Silvers in selling his art in Florida at Disney parks. (Doc. 27-3 at 22–100). In sum, there are sufficient allegations to show that Plaintiffs' claims arise from and relate to Defendants' contacts with Florida.

### 2. Purposeful Availment

For intentional torts, there are two applicable tests to determine whether defendants purposefully availed themselves of the forum. The court may either analyze the nonresident defendant's contacts under the traditional purposeful-availment test or the "effects test." *Mosseri*, 736 F. 3d at 1356. Under the "effects test" a single tortious act can establish purposeful availment when the: (1) the tort was intentional; (2) aimed at the forum; and (3) caused harm that the defendant should have anticipated would be suffered in the forum. *Id.*

Plaintiffs allege that Defendants intentionally forged a contract and publicized its contents to prevent Plaintiffs from selling their works under an independent license with Disney. Given the allegation that Defendants specifically aimed their conduct at preventing Plaintiffs from selling their works at Disney World in Orlando, it is foreseeable that this tortious conduct would result in injury in Florida. In addition, the torts for conversion and fraud allege intentional conduct targeted at a Florida resident and Florida corporation. Unlawfully withholding property belonging to a Florida resident would foreseeably result in injury in Florida. The breach of fiduciary duty claim against Smith is likewise an intentional tort. Smith was aware that Silvers had returned to Florida in July 2014 when he allegedly breached his duty as a fiduciary for Silvers. If true, breaching a fiduciary duty to a person in Florida would foreseeably result in injury in Florida.

Alternatively, jurisdiction is appropriate under the traditional purposeful-availment test as well. The traditional test asks whether the defendant's contacts: (1) relate to the cause of action; (2) "involve some act by which the defendant purposefully availed himself of the privileges of

doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Mosseri*, 736 F.3d at 1357. In making this determination, the court looks at all of the contacts, both individually and collectively, to determine if the test is satisfied. *Id.*

Acme currently holds a license to distribute its Disney-inspired artwork at several Disney locations, including Disney World in Florida. (Doc. 14-1 ¶11, ¶17). The company also sells Star Wars prints to Launch Bay in Hollywood Studios in Florida. (McLain Depo. at 114). Acme has established a relationship with a framing company, American Moulding, LLC, in Melbourne, Florida that frames and delivers the works to the Disney parks. *Id.* at 22, 114–15, 188–89. Acme sometimes employs representatives at the Disney parks to promote the artists and artworks as well as to setup exhibits. *Id.* at18–21, 114–15. Acme also stores some of its merchandise in Florida.

In addition, Acme has a license to distribute its art on Disney cruises based in Florida. (Doc. 14-1 ¶11). For at least some of these cruises, Acme sells directly to galleries and merchants in Florida who then sell the works on the ship. (McLain Depo. at 181–84). Finally, Acme regularly participates in so-called special events. (Doc. 14-1 ¶19). For these events, Acme works directly with Disney employees in Florida to arrange the events and employs Florida-based sales reps to promote their artists. (McLain Depo. at 114, 185–86).

These collective contacts with Florida show that Defendants have engaged in sufficient business activity in the state of Florida to determine that they have purposefully availed themselves of the opportunity to do business in the state of Florida. Given these varied contacts across many years, it would not be unreasonable for defendants to anticipate being haled into court in Florida. Accordingly, under both the "effects test" and the traditional test, Defendants purposefully availed

themselves of Florida as a forum such that it would not be unreasonable for them to anticipate being haled into court here.

### 3. Fair Play and Substantial Justice

In determining whether the exercise of personal jurisdiction comports with fair play and substantial justice, the court considers: "[1] the burden on the defendant, [2] the forum's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief and [4] the judicial system's interest in resolving the dispute." *Liccardello v. Lovelady*, 544 F. 3d 1280, 1288 (11th Cir. 2008). Given that Plaintiffs have met their burden under the first two prongs of the due-process analysis, the burden is on Defendants to show a compelling case for not exercising jurisdiction under the third prong.

Defendants have not attempted to make such a showing—that is, they have not addressed this third prong directly in their brief. While, in their argument as to venue, they do generally complain about the burden of litigating in Florida, they have not addressed the other fair-play factors. For the reasons discussed below, Defendants' argument as to the undue burden of litigating in Florida is insufficient. Moreover, Florida has an obvious interest in providing a convenient forum for its citizens to vindicate their tort claims, Plaintiffs have a clear interest in being able to litigate where they reside, and the Court has not been made aware of any potential harms to the judicial system by resolving the dispute in Florida. Thus, Defendants have not shown a compelling case that exercising personal jurisdiction over them conflicts with notions of fair play and substantial justice.

## IV.   VENUE

Finally, Defendants move to dismiss the action based on improper venue under Federal Rule of Civil Procedure 12(b)(3) and the inconvenience of Florida as a forum for the litigation.

Defendants have not offered any specific argument addressing the standard for dismissal for improper venue or how it might apply to this case. Instead, Defendants rely on their broad assertion that "this case has almost nothing to do with Florida, and everything to do with California." As discussed above, however, the alleged interference with Silvers's business relationship with Disney Theme Parks Merchandise occurred in Florida as did a substantial part of the alleged breach of fiduciary duty and the failure to provide artworks and royalties owed to Plaintiffs. Thus, the Middle District of Florida is an appropriate venue because it is where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

Defendants' argument that this Court should dismiss the action because Florida is an inconvenient forum fails on two grounds. First, the remedy for an inconvenient venue is to seek transfer under 28 U.S.C. § 1404, not dismissal under Rule 12(b)(3). *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 577 (2013) ("Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper.' Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws . . .").

Second, even if Defendants had proceeded under the transfer statute, Defendants fail to meet their burden to establish that transfer is proper. In general, a "plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (1996). Defendants assert, without support, that "all of the witness who would be likely to support or refute Plaintiff's claims . . . are located in Los Angeles." (Doc. 14 at 17). But they do not provide specific names or locations of witnesses. Nor do they identify specific evidence that would need to be transferred to Florida. Defendants claim, again without specifics, that "all the documents and records which are relevant to Plaintiff's

allegations . . . are located in Burbank, California." *Id.* However, as Defendants argument implicitly acknowledges, much of this evidence would be in the form of easily transferable paper records.

In light of the presumption in favor of the plaintiff's choice of forum—and given that Silvers currently resides in Florida, where he alleges he was injured by Defendants—Defendants have not met their burden to establish the propriety of transferring this action to California.

## V.   CONCLUSION

Accordingly, it is recommended that Defendants' motion to dismiss for lack of personal jurisdiction and improper venue be **DENIED**. (Doc. 14).

Separately, Plaintiff's motion for oral argument on the motion to dismiss (Doc. 22) and cross-motion to continue filing discovery (Doc. 53), which is essentially a request to continue to brief the underlying issue until it is resolved, are **DENIED** as moot. Finally, Defendants' motion to strike Silvers' Second Supplemental Affidavit (Doc. 50), which is essentially additional briefing on the underlying issue, be **GRANTED**. In making this recommendation, the Court did not consider any evidence or argument contained in that affidavit.

Recommended in Ocala, Florida on December 1, 2017.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy