UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**WILLIAM SILVERS and WILLIAM SILVERS ART, INC.,**

    Plaintiffs,

v.                                                Case No: 5:17-cv-169-Oc-34PRL

**VERBATA, INC., SEAN MCLAIN, LISA MCLAIN and KIRK SMITH**

    Defendants.

## REPORT AND RECOMMENDATION[1]

Defendants, Verbata Inc. d/b/a Acme Archives (Acme), Sean McLain, and Lisa McLain, have filed a motion to stay these proceedings and compel arbitration. (Doc. 51). Plaintiffs have opposed the motion. (Doc. 55). Upon referral, I submit that the motion is due to be granted, and the proceedings stayed pending resolution of arbitration.

### I. BACKGROUND[2]

Acme holds licenses from several Disney-related companies that allow it to solicit artists like Plaintiff, William Silvers, to produce art incorporating Disney characters, which Acme then

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

[2] Because motions to compel arbitration are determined on a "summary-judgment like standard," the court considers the evidence in a light most favorable to the non-moving party and draws all reasonable inferences in the nonmoving party's favor. *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016).

reproduces and sells.[3] (Doc. 14-1 ¶¶9–11). In 2008, Silvers began creating art for Acme as an independent contractor. (Doc. 23-1 ¶8). Acme sent Silvers its standard artist publishing agreement that provided for 10% royalties to the artist on each piece of art sold, along with a certain number of artist proofs—high-quality reproductions that the artist can sell independently. (Doc. 14-1, Exh. 1 ¶¶2, 17).

The 2008 contract also contained an arbitration clause stating: "Any dispute, claim, demand, or controversy which in anyway relates to, or arises from, the formation, performance, construction, breach, and/or claimed breach of this Agreement shall be submitted by the parties to binding arbitration in Los Angeles County, California." (Doc. 14-1, Exh. 1 ¶26).

Silvers signed the 2008 contract and returned it to Acme. (Doc. 56-1 ¶15). No representative of Acme ever signed the 2008 contract, however. The 2008 contract is styled an agreement "between Acme Animation Archives a wholly owned subsidiary of Verbata, Inc. . . . and William Silvers." (Doc. 14-1 Exh. 1). According to Lisa McLain, however "Acme Animation Archives" is a d/b/a of Verbata, Inc., and not a separate entity. (Doc. 27-1 at 12–13).

Not long after Silvers signed the 2008 agreement, he began producing art for Acme. (Doc. 1 ¶¶18). Acme sent him royalty checks and regular reports of his earnings under the name of "Verbata, Inc." (Doc. 1 ¶19). Silvers also alleges that over the course of the parties' contractual relationship, they entered into various oral agreements to make art for special events and to sell art on consignment. (Doc. 1 ¶¶116–28). It also appears that Acme sent Silvers updated artist agreements in 2011 and 2013, although there is a dispute about whether Silvers ever signed or

---

[3] The other Plaintiff, William Silvers Art, Inc., is Silvers's publishing company. (Doc. 1 ¶30). Defendants Lisa and Sean McLain are Acme's owners and directors. (Doc. 14-1 ¶4). Defendant Kirk Smith is Silvers's former agent. Silvers has also brought a separate claim for breach of fiduciary duty against Smith. (Doc. 1 ¶22, 187–95).

agreed to these agreements, including whether the 2013 contract is a forgery. (Doc. 14-1 Exh. 2, 3).

Silvers alleges that Acme failed to provide him the royalties and artist proofs owed to him, failed to return works given to Acme on consignment, and interfered with his ability to market his art. (Doc. 1 ¶¶34–37). In this motion, Acme and Sean and Lisa McLain seek to compel arbitration based on the 2008 contract.

## II.  LEGAL STANDARD

The Federal Arbitration Act (FAA) establishes "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted). The FAA places arbitration agreements "on an equal footing with other contracts" and requires courts to "enforce them according to their own terms." *Id.*

Parties cannot be compelled to arbitrate their claims absent an agreement to do so. *Larsen v. Citibank FSB*, 871 F.3d 1295, 1302 (11th Cir. 2017). However, if an arbitration agreement exists, federal law "counsels that questions of arbitrability, when in doubt, should be resolved in favor of arbitration." *Emp'rs Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F. 3d 1316, 1322 (11th Cir. 2001). Federal courts have "consistently concluded that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983).

The standard for determining whether an agreement to arbitrate exists is similar to the summary-judgment standard. *Bazemore*, 827 F.3d at 1333. The court will determine the issue only if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "To make a genuine issue entitling the party seeking to avoid arbitration to a trial by jury on the arbitrability question,

an unequivocal denial that the agreement had been made is needed, and some evidence should be produced to substantiate the denial." *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992) (internal quotation marks omitted).

### III. DISCUSSION

A party seeking to compel arbitration has the burden to show that: (1) an agreement to arbitrate exists; (2) there is a nexus to interstate commerce; and (3) the arbitration clause covers the claims. *See Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1293 (S.D. Fla. 2017). There is no dispute that there is a nexus to interstate commerce here. The parties dispute whether Verbata, Inc., can enforce the 2008 contract, whether the 2008 contract is a valid agreement, and whether Silvers's claims fall under the 2008 contract's arbitration clause.

#### A. Agreement to Arbitrate

As an initial matter, Silvers argues that Verbata, Inc., cannot enforce the 2008 contract because the actual party to the contract is "Acme Animation Archives a wholly owned subsidiary of Verbata, Inc." Lisa McLain explained in her deposition that "Acme Animation Archives" was one of several fictitious names (or, d/b/a names) used by Verbata, Inc., in the course of its business and not a separate company. (Doc. 27-1 at 12–13, 76–78). It appears that naming Acme as a "wholly owned subsidiary" was a mere misidentification of the party to the contract not an attempt to name a separate legal entity.

The record shows Silvers received royalty checks signed by "Verbata, Inc.," beginning in 2009, soon after the contract was signed. (Doc. 14-1 Exh. 5, 6, 9, 12) (Doc. 1-2). Silvers sued Verbata, Inc., d/b/a Acme Archives, recognizing that Verbata, Inc., is the real party in interest. In addition, the issues could be interpreted as relating to contract formation, meaning that Silvers

must present the defense to the arbitrator in the first instance as the contract specifies that issues of formation are to be resolved in arbitration.

Defendants Sean and Lisa McLain, as Acme's owners and directors, can likewise enforce the 2008 contract for claims asserted against them as officers of the company. *See Turner Const. Co. v. Advanced Roofing, Inc.*, 904 So. 2d 466, 470 (Fla. 3d DCA 2005). Defendant Kirk Smith, on the other hand, is not an agent or officer of Acme, or otherwise a party to the 2008 contract. Thus, the Verbata, Inc., and the McLains may enforce the 2008 contract while Smith may not.

The next question is whether the 2008 contract is, in fact, an agreement between the parties. This issue is for the court to decide based on "ordinary state-law principles." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).[4] While the parties cite case law from both California and Florida, they have not identified any conflict in the two states' laws. *See Cooper v. Meridian Yachts, Ltd.*, 575 F. 3d 1151, 1171 (11th Cir. 2009) (explaining that a choice-of-law analysis is not necessary where the parties have not shown a conflict). The issues raised in this motion turn on well-established principles of contract law, and the Court will decide the issues based on these principles.

An agreement is formed when a "specific offer is communicated to the offeree, and acceptance is subsequently communicated to the offeror." *Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007) (applying California law); *accord Pena v. Fox*, 198 So. 3d 61, 63 (Fla. 2d DCA 2015). Assent to a contract is determined by an objective standard—the "reasonable meaning of [the parties'] words and acts, not their unexpressed intentions or

---

[4] While parties can agree to arbitrate certain threshold issues of arbitrability (such as the legality of an agreement or the scope of an otherwise binding agreement), the issue of whether any agreement was ever concluded is for a court to decide. *See Rent-a-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 70 n.2 (2010); *Chastain*, 957 F.2d at 854 ("[P]arties cannot be forced to submit to arbitration if they have not agreed to do so.").

understandings." *Pacific Corp. Grp. Holdings, LLC v. Keck*, 181 Cal. Rptr. 3d 399, 411 (Cal. Ct. App. 2014); *accord Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985).

According to Silvers, Acme sent him the 2008 contract, which he signed and returned to Acme with the intention to "honor the agreement." (Doc. 23-1 ¶9). (Doc. 56-1 ¶15). Moreover, Silvers actually worked as an independent contractor for Acme, creating Disney-related art for distribution under Acme's licenses. (Doc. 23-1 ¶8) (Doc. 56-1 ¶28). Silvers received 10% royalties resulting from sales of the reproductions of his art, although Silvers disputes whether he received all of the compensation he is owed. (Doc. 56-1 Exh. B) (Doc. 1-2) (Doc. 14-1 Exh. 12).

Most tellingly, during the course of the parties' growing dispute, Silvers relied on, and quoted from, the 2008 agreement in arguing that he was entitled to additional artist proofs. (Doc. 56-1 ¶29); (Doc. 46. Exh. 13). While Silvers maintains that he did not personally believe the contract to be enforceable, assent to a contract is determined based on an objective standard not a party's "unexpressed intention or understanding." *Keck*, 181 Cal. Rptr. 3d at 411.

The fact that the contract is not signed by both parties is also not a barrier to enforcement because the agreement does not specify that both signatures are a condition precedent to forming a binding contract. *Rael v. Davis*, 83 Cal. Rptr. 3d 745, 753 (Cal. Ct. App. 2008); *Integrated Health Servs. of Green Briar, Inc. v. Lopez-Silvero*, 827 So. 2d 338, 339 (Fla. 3d DCA 2002) ("The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, for example, by the acts or conduct of the parties.") (internal quotation marks omitted).

Attempting to create an issue of fact, Silvers argues there are issues related to the validity of numerous subsequent agreements and modifications, both oral and written, that supersede the 2008 contract and preclude arbitration. However, Silvers has not identified, or even alleged, any agreement to revoke or alter the parties' agreement to arbitrate. He acknowledges that in

negotiating various oral agreements, the parties "never discussed or agreed to or even negotiated things like venue and arbitration." (Doc. 23-1 ¶14). Notably, both of the subsequent written agreements in the record (whose validity is disputed) contain arbitration clauses identical to the 2008 provision. (Doc. 14-1 Exh. 2 ¶19, Exh. 3 ¶17).[5] Thus, based on state law principles of contract formation, Silvers has failed to establish there is any genuine issue of fact relating to the enforceability of the 2008 contract, at least as to the arbitration provision.

### B. Claims Subject to Arbitration

Once an agreement to arbitrate exists, questions of arbitrability "must be addressed with a healthy regard for the federal policy favoring arbitration." *Cone*, 460 U.S. at 24. Claims are subject to arbitration if there is any possible interpretation of the agreement that would cover the claims. *See U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F. 3d 1308, 1311–12 (11th Cir. 2014) (holding factual dispute over "which contract governs" was a question of arbitrability). Any doubts must be resolved in favor of arbitration unless the Court can say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986). When deciding whether claims fall within the scope of an arbitration provision, the court should "ignore the legal labels" the party attaches to its claims and, instead, look for the "true thrust" of the complaint. *Cyanotech*, 769 F. 3d at 1311–12.

The arbitration provision in the 2008 contract broadly delegates to arbitration: "Any dispute, claim, demand, or controversy which in anyway relates to, or arises from, the formation, performance, construction, breach, and/or claimed breach of this Agreement." (Doc. 14-1, Exh. 1 ¶26). The Eleventh Circuit has instructed that similar language should be broadly interpreted to

---

[5] The Court expresses no view on the validity of these agreements.

reach all disputes because: "Any disputes means all disputes, because 'any' means all." *Anders v. Hometown Mortg. Servs., Inc.*, 346 F. 3d 1024, 1028 (11th Cir. 2003).

If this broadly worded clause were not enough, all of Silvers's claims re-allege the same essential facts—namely, that beginning around 2008, the parties entered into an agreement that Acme breached by not providing Silvers the royalties and artist proofs he was owed. (Doc. 1 ¶¶16–21, 34–35). Although Silvers alleges that some of his claims are based on subsequent agreements, all of the claims stem from the parties' contractual relationship that began with the 2008 contract. *See Cyanotech*, 769 F. 3d at 1311 ("[T]he district court cannot weigh the evidence to decide which contract governs the dispute or recast the allegations of fact in the complaint to implicate only [one] contract.").

While some of Silvers's claims are couched as fraud and tortious interference, these legal labels are not controlling of the arbitration issue. Accordingly, and in light of the federal policy in favor of enforcing arbitration agreements, 2008 contract, and its arbitration clause, is "susceptible of an interpretation that covers [this] dispute." *AT&T Tech.*, 475 U.S. at 650. The only exception is the claim against Defendant Smith (count eight) who was not a party to the 2008 contract. This claim is not arbitrable.

### C. Stay Pending Arbitration

When an action includes both arbitrable and nonarbitrable claims, the court has discretion whether to stay the entire proceedings pending arbitration, or merely stay the claims subject to arbitration and proceed on the other claims. *Variable Annuity Life Ins. Co. v. Laferrera*, 680 F. App'x 880, 884 (11th Cir. 2017). Here a stay is appropriate as to all the claims because the "arbitrable claims predominate" this action, and "the outcome of the nonarbitrable claims will depend on the arbitrator's decision." *Id*.

## IV. CONCLUSION

Accordingly, it is **RECOMMENDED** that Acme's motion to stay the proceedings and compel arbitration be **GRANTED** except as to count eight. The proceedings should be **STAYED** pending resolution of the claims in arbitration in Los Angeles County, California.

**Recommended** in Ocala, Florida on November 16, 2017.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy